FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 19, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TAMARA G.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:26-cv-247-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

Plaintiff Tamara G. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 2 and Title 16 benefits. Plaintiff claims she is unable to work due to several physical and mental

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

impairments. Substantial evidence does not support the ALJ's evaluation of the medical opinions and Plaintiff's symptom claims. These errors impacted the nondisability determination. This matter is remanded for further proceedings.

## I. Background

Plaintiff filed her Titles 2 and 16 applications for benefits on February 27, 2023, alleging disability beginning October 23, 2021.[2] Plaintiff appeared for a hearing before ALJ Jesse Shumway in May 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that she was unable to work due to several mental disorders, fibromyalgia, edema, neuropathy, and medication side effects.[4]

The ALJ issued a decision finding Plaintiff not disabled.[5] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent"

---

[2] Administrative Record (AR) 241, 251, 280.

[3] AR 38–61.

[4] AR 41–49.

[5] AR 14–31. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

with the medical evidence and other evidence.[6] As to the medical opinions, the ALJ found:

- the psychological evaluation opinions of Kayleen Islam-Zwart, PhD, and Katrina Higgins, PsyD, not persuasive.
- portions of the psychological evaluation opinion of Lance Anders, ARNP, persuasive and other portions not persuasive.
- the physical examination opinion of Thomas Crisp, DO, mostly persuasive.
- the reviewing opinions of the State agency consultants at the initial and reconsideration levels persuasive.[7]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through June 30, 2026.

---

[6] AR 24. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499 n.2 (9th Cir. 2022).

[7] AR 26–29.

- Step one: Plaintiff had not engaged in substantial gainful activity since October 23, 2021, the alleged onset date.
- Step two: Plaintiff had the medically determinable severe impairments of fibromyalgia, obesity, irritable bowel syndrome, attention-deficit hyperactivity disorder, mood disorder, anxiety disorder, post-traumatic stress disorder, and personality disorder.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to:

> perform a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: she can lift up to five[8] pounds frequently and 20 pounds occasionally; she can stand and walk four hours total in any combination in an eight-hour day; she would need an at-will sit/stand option; she could frequently push and pull with the upper extremities and occasionally use foot controls; she could frequently stoop and crouch but only occasionally

---

[8] The ALJ likely meant “ten” pounds here, consistent with the regulatory definition of light work, *see* 20 C.F.R. §§ 404.1567(b), 416.967(b), but physical exertional capabilities are not at issue.

balance, kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; she could frequently handle, finger, feel, and reach overhead; she could tolerate occasional exposure to extreme cold and heat, pulmonary irritants, vibration, and hazards (e.g., unprotected heights, moving mechanical parts); she would need access to a restroom during regular scheduled breaks; she would be limited to simple, routine tasks; she could have occasional, superficial interaction with co-workers and supervisors but no interaction with the public; and she would need a predictable work environment with clear, employer set goals and no more than occasional changes.

- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as router, collator operator, and office helper.[9]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[10] Plaintiff now appeals to district court.[11]

---

[9] AR 19–31.

[10] AR 1–3.

[11] ECF No. 1.

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[12] Thus, the ALJ must articulate his findings and cite such supporting evidence to permit the court to meaningfully review the ALJ's findings.[13]

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[14] and such error

---

[12] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[13] *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

---

[15] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

## III. Analysis

Plaintiff argues the ALJ committed several errors in evaluating the medical opinions and Plaintiff's testimony. In response, the Commissioner argues no error occurred and that the ALJ's decision is supported by substantial evidence. As is explained below, the ALJ erred in evaluating the medical opinions and Plaintiff's mental symptom claims.

### A. Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues that substantial evidence does not support the ALJ's rejection of three psychological evaluation opinions.[17] The Court agrees. Further, the ALJ's evaluation resulted in a crafted RFC without an attendance, time off task, and/or workday-completion-related limitation. This matter, therefore, is remanded for the ALJ to

---

[17] Plaintiff also argues the ALJ erred in evaluating the State agency psychological consultants' reviewing opinions. The ALJ's reliance on the reviewing opinions is addressed when analyzing the first examining opinion.

reevaluate the examining opinions and reconsider such RFC limitations.

1. Standard

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[18] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[19] Supportability and consistency are the most important factors.[20] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[21]

---

[18] 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[19] 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

[20] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[21] *See Burrell*, 775 F.3d at 1138.

2. Kayleen Islam-Zwart, PhD

On January 3, 2023, Dr. Islam-Zwart performed a psychological evaluation of Plaintiff.[22] Dr. Islam-Zwart diagnosed Plaintiff with PTSD, borderline personality disorder, unspecified bipolar related disorder, opioid use disorder in remission with treatment, and alcohol use disorder in remission.[23] Dr. Islam-Zwart opined that Plaintiff was markedly limited in the following activities: understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; communicate and perform effectively in a work setting; and set realistic goals and plan independently.[24] Dr. Islam-Zwart opined that Plaintiff was severely limited in the following activities: perform activities within a schedule and maintain attendance/punctuality within customary tolerance; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from

---

[22] AR 497–505.

[23] AR 497–98.

[24] AR 498.

psychological symptoms.[25] Dr. Islam-Zwart provided a narrative report explaining her evaluation, which included her opinion that Plaintiff appeared unable to work.[26]

The ALJ found Dr. Islam-Zwart's opinion not persuasive because:

> Her conclusion that the claimant is unable to work involves an issue reserved to the Commissioner and is neither inherently valuable nor persuasive. Her ratings of marked and severe limitations do not include a narrative explanation for why she would be so limited in those particular categories, and her narrative report of her interview with the claimant focuses primarily on the claimant's subjective allegations; only half of the four-page report is devoted to objective findings, and those findings demonstrate only modest deficits. Her ratings are also inconsistent with the longitudinal record, including the opinions of the evaluators at the state agency level of disability determination, the normal mental status documented throughout the treatment notes, and the minimal attempts at receiving mental health treatment. I note that Dr. Islam-Zwart's evaluation was conducted for the Washington State Department of Social and Health Services (DSHS), and DSHS criteria for disability differs from the Social Security Act.[27]

---

[25] AR 498.

[26] AR 501–05.

[27] AR 26–27.

The ALJ discussed the referenced mental health treatment notes earlier in the decision.[28] The relevant records begin with Plaintiff self-reporting mild depression and anxiety at a November 2021 appointment for opioid use disorder (in remission) treatment.[29] She underwent a behavioral health evaluation for purposes of starting counseling, during which she reported a history of hallucinations, paranoia, and believing others could read her thoughts, last occurring eight months prior.[30] She said she currently felt paranoid and terrified around people.[31] The evaluator noted that Plaintiff appeared fully oriented with intact memory, average intelligence, and adequate concentration.[32] Around this time, Plaintiff was diagnosed with bipolar disorder, unspecified anxiety disorder with symptoms of trauma, rule-

---

[28] *See* AR 24–25.

[29] AR 1082.

[30] AR 467.

[31] AR 467–68.

[32] AR 468.

out PTSD, rule-out cannabis use disorder, and ADHD, the latter for which she was prescribed Ritalin.[33]

Plaintiff attended her first counseling session in January 2022, but then did not appear for the next two scheduled sessions.[34] She told her doctor around this time that the Ritalin "helped her to reduce the scattered brain issue" but she was still dealing with significant depression and poor concentration, but less anxiety.[35] Self-report testing revealed moderate depression and mild anxiety.[36] Her doctor increased her Ritalin dose, which Plaintiff reported in April 2022 improved her depression and anxiety, though she reported it had been two weeks since her last panic attack.[37] Her doctor called Plaintiff's

---

[33] AR 468, 551.

[34] AR 445–48.

[35] AR 549.

[36] AR 1089.

[37] AR 534.

ADHD "adequately treated."[38] In August 2022, Plaintiff told her doctor she "has done pretty well" in controlling her anxiety.[39]

In October 2023, Plaintiff told her doctor she was experiencing PTSD symptoms, and specifically nightmares and sleepwalking, from a recent car accident.[40] Her doctor noted, "Under current treatment regimen, patient's manifestations of ADHD are improved and the treatment objectives are met."[41] In October 2024, Plaintiff told her doctor that, regarding PTSD symptoms, medication "helped slow her mind down and sleep but she is still sleep walking."[42] Her doctor also changed her ADHD medication to Strattera after a psychological evaluator recommended Plaintiff consider it or lithium.[43] The doctor noted, "W[hi]le she is functioning during the day with some limitation,

---

[38] AR 534.

[39] AR 531.

[40] AR 1236–38.

[41] AR 1236.

[42] AR 1464.

[43] AR 1465.

another very disruptive problem is sleep walking. She is able to get to sleep at night, but she would get up and do things that do[]n't make sense to her next morning."[44]

Plaintiff participated in counseling from December 2024 to March 2025.[45] Plaintiff mostly discussed family dynamics with her counselor, but also regularly mentioned experiencing symptoms of and being in treatment for PTSD and borderline personality disorder.[46] Self-report testing from the time this counseling ended revealed moderately severe depression and severe anxiety.[47]

Before and throughout the relevant period, Plaintiff received monthly injections of buprenorphine to treat opioid use disorder.[48] At each of these visits, the provider noted the following in the "Physical

---

[44] AR 1465.

[45] AR 1411–24.

[46] AR 1411–12, 1417–18, 1420–21, 1423–24.

[47] AR 1408.

[48] *E.g.*, AR 1082.

Exam" portion of Plaintiff's records: "PSYCH Appropriately oriented, no apparent auditory or visual hallucinations."[49]

Plaintiff reported the following to Dr. Islam-Zwart at the evaluation, among several other similar complaints: she was diagnosed with bipolar disorder and PTSD; mental impairments caused her to get fired from jobs over the last decade; "she is always depressed, and she has been depressed for 15 years"; "she is basically just waiting to die" and "she cannot wait to die"; she had three past psychiatric hospitalizations for suicide attempts, last occurring seven years ago; monthly counseling was not frequent enough to be effective; she mostly "stay[s] low rather than having ups and down" but has infrequent manic episodes, last occurring the week before, lasting up to two days; she engages in dangerous behavior; she has panic attacks daily; "taking care of herself is like a full-time job and at one point she was not bathing or eating"; she lived in a van; she did not like people but could work herself up to seeing family and limited social interactions;

---

[49] AR 1083, 1087, 1090, 1094, 1296, 1302, 1307, 1313, 1318, 1324, 1329, 1333, 1368, 1373, 1379, 1385, 1391, 1397, 1401, 1407.

she did not trust anybody due to past sexual abuse and abandonment; she has nightmares and sleepwalks; she experiences flashbacks, is triggered when around people, startles easily, and monitors her surroundings; she is "both overly emotional and emotionally numb"; she experiences visual and auditory hallucinations; and she was paranoid that people were watching and talking about her.[50]

Dr. Islam-Zwart's mental status exam showed the following: Plaintiff "was emotional much of the time and she seemed distressed"; she was able to respond to questions as necessary; "[t]here was no real indication of cognitive difficulty"; she had average intelligence; she put forth adequate effort; and her mental status and fund of information were normal based on her adequate performance on tests such as serial 7's, spelling "world" forward and backward, short-term memory tasks, and word associations.[51]

Further, the ALJ found the record showed "very conservative" mental health treatment consisting mostly of medication managed by

---

[50] AR 501–02.

[51] AR 503–04.

her primary care provider instead of a specialist, which "suggests low case complexity and severity."[52] The ALJ further described:

> She also had minimal engagement in mental health counseling during the relevant period of nearly four years; she had two intake assessments in 2021 and 2022 but did not follow up, and she had about three months of counseling in 2025. She has not required any major psychiatric interventions during the relevant period, such as inpatient hospitalization, crisis intervention, or intensive outpatient treatment. The claimant testified at the hearing she had health insurance and could seek any treatment she felt she needed.[53] Thus, the lack of treatment suggests she does not feel the need for treatment, which in turn suggests she is less troubled by her symptoms than she alleges.[54]

Here, on this record, substantial evidence does not support the ALJ's explanation for rejecting Dr. Islam-Zwart's opinion, because the evidence the ALJ relied on is not sufficiently inconsistent with the opinion. First, the template, routine, and cursory notes of Plaintiff's normal psychiatric status at each medication-management appointment for opioid addiction treatment have very limited

---

[52] AR 25.

[53] AR 50.

[54] AR 25.

evidentiary value. In substance, they only support that the buprenorphine provider observed Plaintiff having appropriate orientation and not contemporaneously experiencing hallucinations. The notes say nothing about several other crucial areas of work-related mental functioning. Moreover, it is reasonable not to expect this provider—who is not a mental health specialist and was dispensing an unrelated medicine—to rigorously investigate or document observations of specific mental statuses.[55] The ALJ, therefore, gave

---

[55] *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (comparing psychologist's mental health findings against findings from *other mental health* professionals); *Diedrich v. Berryhill*, 874 F.3d 634, 641 (9th Cir. 2017) (noting that courts do "not necessarily expect" someone who is not a mental-health professional to document observations about the claimant's mental-health symptoms); *see also Jajo v. Astrue*, 273 F. App'x 658, 660 (9th Cir. 2008) (not reported) ("The ALJ relied on the lack of corroboration on the part of the orthopedic consultant and various emergency room reports. However, the purpose of those visits

undue weight to the mental health observations in the opioid-addiction medication-management records when discounting Dr. Islam-Zwart's opinion.

Also, the ALJ unreasonably rejected Dr. Islam-Zwart's opinion as unsupported by her mental status exam findings. Plaintiff demonstrated average intelligence and no cognitive difficulties on the tasks performed, but her ability to, for example, perform serial 7's and spell "world" forward and backward says nothing about her capacity to maintain regular attendance and complete a normal workday without psychological interruptions. Dr. Islam-Zwart rated Plaintiff severely limited in those areas. That Dr. Islam-Zwart did not provide a narrative explanation for those ratings is not an adequate basis to find her opinion unsupported because her report of Plaintiff's psychiatric history is plainly support for those ratings.[56] Though it is largely based on Plaintiff's self-reports, "the rule allowing an ALJ to reject opinions

---

was not to assess [the claimant]'s mental health, and thus any lack of corroboration is not surprising.").

[56] *See* AR 501–02.

based on self-reports does not apply in the same manner to opinions regarding mental illness."[57] Dr. Islam-Zwart's clinical interview was itself an objective measure; diagnoses depending "in part on the patient's self-report, as well as on the clinician's observations of the patient . . . is the nature of psychiatry";[58] and, crucially, Plaintiff's reports to Dr. Islam-Zwart were consistent with Plaintiff's reports to other providers and evaluators of heightened anxiety and depression,[59] and of PTSD symptoms,[60] which are especially relevant to Plaintiff's ability to maintain attendance and complete a workday uninterrupted by psychological symptoms.

---

[57] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

[58] *Id.*

[59] AR 467–68, 549, 1086, 1089, 1093, 1218, 1343–44, 1408; *but see* AR 1082 (November 2021: Plaintiff reporting "mild" depression and anxiety); AR 534 (April 2022: Plaintiff reporting Ritalin helped improve her depression and anxiety); AR 531 (August 2022: Plaintiff reporting she did well controlling her anxiety).

[60] AR 1218, 1236, 1238, 1343–44, 1464–65.

Turning to the ALJ's remaining reasons, the ALJ reasonably found Plaintiff's mental health treatment relatively limited, but this is not substantial evidence of Dr. Islam-Zwart's opinion's inconsistency with the record. In the instances Plaintiff did seek treatment, she consistently reported depression, anxiety, and PTSD symptoms. The ALJ correctly noted that Plaintiff did not visit a psychiatrist and instead relied on her primary care doctor for mental health care. However, her primary care doctor's treatment was focused on ADHD, and the doctor ultimately noted that Plaintiff met treatment goals with respect to ADHD and did not mention other conditions.[61] At that time, Plaintiff's doctor still noted PTSD symptoms, and a year later reported Plaintiff was still having PTSD symptoms and "some limitation" in daily functioning.[62]

Additionally, although the ALJ appropriately considered that Plaintiff had health insurance and therefore had more ready access to health care, the ALJ failed to discuss whether Plaintiff's mental

---

[61] *See* AR 1236.

[62] AR 1464–65.

impairments were themselves the reason Plaintiff did not pursue more treatment.[63] Plaintiff's diagnoses, and the nature of her consistent mental symptom reports to providers and evaluators, tend to support such an inference.

Finally, the ALJ's reliance on the State agency psychological consultants' reviewing opinions does not provide substantial evidence to reject Dr. Islam-Zwart's opinion. The ALJ credited the reviewing opinions as a reason to discount Dr. Islam-Zwart's opinion because they provided narrative explanations of the medical records to support their conclusions, their explanations were consistent with the record as a

---

[63] *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (holding an ALJ may not reject a claimant's symptom testimony based on a lack of treatment if "the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions"); *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1209–300 (9th Cir. 1999) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

whole, and they were familiar with Social Security regulations.[64] But, as explained, the evidence the consultants reviewed is not substantial evidence. The consultants' narratives and Social-Security familiarity is also not substantial evidence on this record when three clinicians evaluated Plaintiff and all opined that she would be limited in her ability to maintain regular attendance and/or complete a workday without psychological interruptions.[65]

3. Katrina Higgins, PsyD

On January 17, 2024, Dr. Higgins performed a psychological evaluation of Plaintiff.[66] Dr. Higgins diagnosed Plaintiff with PTSD,

---

[64] AR 29.

[65] AR 498, 1221–22, 1347–48. *See Woods*, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is consistent . . . with the evidence from other medical sources . . . . The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." (citation modified)).

[66] AR 1217–22.

unspecified bipolar and related disorder, ADHD by history, and cannabis use disorder.[67] Dr. Higgins opined that Plaintiff "will have difficulty attending work and interacting appropriately with others in the workplace"; "likely would struggle to perform even relatively simple tasks on a consistent basis"; and "is not currently able to manage the stress of a typical work environment."[68]

The ALJ did not find Dr. Higgins' opinion persuasive because "it is not supported by her own generally normal evaluation findings and inconsistent with the record as a whole, the normal mental status documented throughout treatment notes, and her limited mental health treatment."[69]

Here, substantial evidence does not support the ALJ's inconsistency finding with respect to Dr. Higgins' opinion for the same reasons as the inconsistency finding with respect to Dr. Islam-Zwart's opinion. Both explanations by the ALJ relied on the "normal mental

---

[67] AR 1221.

[68] AR 1221–22.

[69] AR 27.

status documented throughout the treatment notes" and the limited mental health treatment. The Court has already explained why this evidence is not inconsistent with a medical opinion that Plaintiff would struggle to maintain attendance and complete a normal workday without psychological interruption.

As to supportability, Dr. Higgins justified her opinions with a review of Plaintiff's function report, the November 2021 behavioral evaluation, Dr. Islam-Zwart's psychological evaluation, and Plaintiff's primary care records; a clinical interview, during which Dr. Higgins observed Plaintiff was depressed and tearful; and a mental status exam.[70] Like she did on Dr. Islam-Zwart's mental status exam, Plaintiff demonstrated normal cognitive functioning and the ability to perform simple tasks on Dr. Higgins' mental status exam. However, as explained in the context of Dr. Islam-Zwart's mental status exam, such mental status findings say nothing about attendance and workday-completion opinions, so they are not substantial evidence to find

---

[70] AR 1217–21.

Dr. Higgins' opinion unsupported. The ALJ, therefore, erred in rejecting Dr. Higgins' opinion.

4. Lance Anders, ARNP

On September 8, 2024, NP Anders performed a psychological evaluation of Plaintiff.[71] He observed that Plaintiff had extreme difficulty staying focused, had a "self-defeated attitude," was hypo-verbal with pressured speech at times, showed some loose associations and tangential thinking, and had an "extremely labile" affect as she would intermittently break down and cry.[72] He diagnosed Plaintiff with bipolar disorder, depression, PTSD, ADHD, opioid use disorder in remission with treatment, and unspecified personality disorder.[73] He opined that Plaintiff could perform simple or complex tasks, but would "have difficulty" accepting instructions from supervisors, interacting with others, performing work activities on a consistent basis without special instructions, maintaining regular attendance at work,

---

[71] AR 1343–48.

[72] AR 1344–45.

[73] AR 1347.

completing a normal workweek without psychological interruption, and dealing with the usual stress encountered in the workplace.[74]

NP Anders concluded that Plaintiff would "significantly decompensate" if she were to return to the workforce.[75]

The ALJ found NP Anders' opinion "mostly persuasive to the extent it adequately quantifies the claimant's difficulties, such as the finding of no difficulty with simple or detailed tasks."[76] However, according to the ALJ:

> [NP Anders'] statements that the claimant would simply "have difficulty" is too vague to utilize in assessing the claimant's residual functional capacity. I acknowledge that the claimant would have some level of difficulties in the areas Mr. Anders mentioned, but these difficulties are no more than moderate and are accommodated by the limitations in the residual functional capacity set forth above. I do not find his assertion that the claimant would decompensate if she returned to work, [*sic*] as it is purely speculative and based on the claimant's significantly impaired presentation that is markedly discrepant from her

---

[74] AR 1347–48.

[75] AR 1348.

[76] AR 28.

> normal presentation at treatment visits throughout the record and some other mental evaluations.[77]

Here, to the extent the ALJ rejected NP Anders' opinion only for being vague, the ALJ erred. If an opinion is supported by examination findings, then the ALJ has a duty to develop the record to clarify any consequential ambiguities either contained in or caused by the opinion before discounting it for vagueness.[78] That Plaintiff would "have difficulty" in specific areas adequately conveys that she would have some degree of limitation. This is not necessarily vague on its own, as evidenced by the ALJ still crediting NP Anders' opinion that Plaintiff

---

[77] AR 28.

[78] *See* 20 C.F.R. §§ 404.1512(b), 416.912(b); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." (citation modified)); *cf. Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1432–33 (9th Cir. 1995).

would "have difficulty" interacting with others by incorporating corresponding limitations in the RFC. But, in any event, NP Anders' report and concluding remarks make clear that he believed Plaintiff had severe limitations. Accordingly, the ALJ should have considered the supportability and consistency of NP Anders' opinion.

To the extent the ALJ nevertheless did so, the ALJ erred. As the Court's prior discussion of the medical records and the other two examining opinions explains, medical opinions that Plaintiff would have limitations in her abilities to maintain attendance and complete a normal workweek without psychological interruptions are not inconsistent with the treatment records and other evaluations.

**B. Symptom Reports: Plaintiff establishes consequential error only regarding the mental symptom testimony.**

Plaintiff argues the ALJ failed to provide valid reasons for discounting her testimony regarding her mental symptoms, excessive vomiting, frequent bathroom use, and the side effects of her medication. The ALJ rejected Plaintiff's mental symptom testimony for the same reasons as he erroneously found the psychological examining opinions inconsistent with the record. Therefore, for the reasons

explained above when addressing consistency, and considering the Ninth Circuit's standard for rejecting symptom testimony is more demanding than the standard to reject medical opinions,[79] the ALJ erred in rejecting the mental symptom testimony. As to the bathroom use, vomiting, and side effects testimony, as is explained below, Plaintiff fails to establish consequential error.

1. Standard

After finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work.[80] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) objective medical evidence; (2) daily activities; (3) the location, duration, frequency, and intensity of pain or other symptoms; (4) factors that precipitate and aggravate the symptoms; (5) the type, dosage, effectiveness, and side

---

[79] *See Collard v. Bisignano*, No. 25-6334, --- F.4th ----, 2026 WL 2856741, at *2 (9th Cir. Sept. 23, 2026).

[80] 20 C.F.R. §§ 404.1529(c), 416.929(c).

effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (6) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; and (7) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms.[81]

If the ALJ finds inconsistency between the claimant's reported symptoms and the evidence, the ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[82] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[83]

---

[81] *Id.* §§ 404.1529(c)(2), (3), 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. § 36:25, Consideration of objective medical evidence (2026).

[82] *Smartt*, 53 F.4th at 499; 20 C.F.R. §§ 404.1529(c), 416.929(c); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[83] *Smartt*, 53 F.4th at 499 (alteration added).

2. Plaintiff's testimony

Plaintiff testified that she has "vomiting attacks about 8 times a year where [she] throw[s] up for about 10–12 hours."[84] She said she went to the ER for this condition, but "they don't know what it is."[85] She said her vomiting has progressively worsened over the past 10 years and caused her to call out sick from work.[86] She also testified that due to her irritable bowel syndrome, "right after [she] eat[s], it's very painful for 15–20 minutes, and [her] bowels are always impacted. So [her] bowels have to be unpacted [*sic*] often."[87] She said she goes to the bathroom 8 to 10 times for approximately 15 minutes on a typical day.[88] Further, she testified, without elaboration, that her medications "are sedat[ing]" and "make[ her] more sleepy."[89]

---

[84] AR 59.

[85] AR 59.

[86] AR 60.

[87] AR 59.

[88] AR 59–60.

[89] AR 41.

3. ALJ's reasons, and analysis thereof

The ALJ stated that Plaintiff reported excessive vomiting and sedating side effects of medication, but did not recite Plaintiff's testimony regarding how often she used the bathroom.[90] The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her "medically determinable impairments" inconsistent "with the medical evidence and other evidence in the record for the reasons explained in this decision."[91]

As to records of gastrointestinal issues, the ALJ reported that in September 2021, Plaintiff visited a gastroenterologist for irritable bowel syndrome and other gastrointestinal issues.[92] Those records show Plaintiff underwent a gastric emptying study that was unrevealing, noting she previously underwent endoscopy and another gastric emptying study that were also unrevealing.[93] The ALJ further

---

[90] AR 23–24.

[91] AR 24.

[92] AR 24 (citing AR 586, 610).

[93] AR 586, 610.

reported that her primary care doctor diagnosed her with irritable bowel syndrome in July 2021, stated her symptoms were unlikely caused by structural disease, prescribed Bentyl, and directed her to use over-the-counter medicine.[94] The ALJ also noted that Plaintiff's gastroenterologist in July 2021 stated that her past diagnosis of hyperemesis syndrome related to cannabis was possibly the cause of her recent nausea and vomiting.[95] The ALJ also reported that Plaintiff underwent a physical evaluation with Thomas Crisp, DO, to whom Plaintiff reported constant vomiting up to six times a year.[96] As part of the RFC, the ALJ found Plaintiff "would need access to a restroom during regular scheduled breaks."[97]

The ALJ did not explicitly mention records of Plaintiff's side effects from medication. The ALJ did, however, consider her primary care doctor's August 2022 note regarding anxiety and ADHD

---

[94] AR 24 (citing 611).

[95] AR 24 (citing 606–07).

[96] AR 28 (citing AR 1208).

[97] AR 22.

treatment, in which her doctor additionally noted that fatigue could be a side effect of Plaintiff's antipsychotic medication.[98]

Here, on this record, the ALJ gave valid reasons for rejecting Plaintiff's testimony regarding vomiting and frequent bathroom use, though the ALJ did not explicitly recite Plaintiff's testimony regarding the latter. The ALJ correctly reasoned that the longitudinal record during the relevant period contained no objective medical evidence to support the severity of Plaintiff's bathroom and vomiting testimony. Additionally, medical testing did not reveal any objective findings that would be consistent with Plaintiff's testimony.[99] Substantial evidence,

---

[98] AR 25 (citing AR 531).

[99] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints. *Smartt*, 53 F.4th at 498 (quoting *Burch v.*

therefore, supports the ALJ's clear and convincing reasoning that Plaintiff's testimony of having to use the bathroom 8 to 10 times a day, and having completely disabling vomiting spells, was not credible.

Next, the ALJ did not explicitly analyze Plaintiff's testimony of sedating side effects of medication. The regulations require an ALJ to consider the side effects of any medication the claimant takes to alleviate her symptoms.[100] To the extent the ALJ did not consider side effects, any error is harmless on this record. The ALJ's review of the longitudinal medical records, none of which provide objective findings or prior reports consistent with work-impacting sedation, would support finding that Plaintiff's side-effects testimony does not translate to an additional RFC limitation.

## IV. Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary

---

*Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[100] 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

support—the sequential process. Consistent with this Order, the ALJ is to (1) reevaluate the psychological evaluation opinions of Dr. Islam-Zwart, Dr. Higgins, and NP Anders; (2) reevaluate Plaintiff's mental symptom testimony according to the Ninth Circuit's clear-and-convincing standard; and (3) if necessary, translate any credited opinions or testimony regarding Plaintiff's ability to maintain attendance and/or complete a workday/workweek without psychological interruptions into RFC limitations.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.
2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

///

//

/

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 19th day of November 2026.

EDWARD F. SHEA
Senior United States District Judge